WILLIAM J. HAHN, Assignee, v. ROBERT L. PENNEY, Assignee.[1]

April 22, 1895.

No. 8749.

**Findings Sustained.**

*Held*, the findings of fact are supported by the evidence.

**Evidence—Hearsay.**

Certain statements of a third party *held* to be mere hearsay, and not competent evidence.

**Evidence of Insolvency—Schedule of Liabilities.**

In a suit by an assignee of an insolvent debtor against a third party, the schedule of liabilities of the insolvent debtor on file in the insolvency proceedings is not competent evidence against such third party to prove the indebtedness of the assignor.

**Same—Reputation of Solvency.**

That a bank was reputed in financial circles in the city in which it was doing business to be solvent is competent evidence of its solvency, and also competent evidence tending to prove that a third party dealing with it did not know, or have reasonable cause to believe, that it was insolvent.

[1] Reported in 62 N. W. 1129.

**Same—Opinion of Witness.**
> The opinion of a witness who has examined the affairs of a corporation is not competent to prove its solvency or insolvency.

Appeal by defendant from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Reversed.

*Henry J. Gjertsen,* for appellant.

*John W. Arctander* and *Hahn & Hawley,* for respondent.

CANTY, J. The State Bank of Minneapolis and the American Exchange Bank were each doing business in Minneapolis. On June 22, 1893, the State Bank closed its doors, being then indebted to the Exchange Bank on open account in the sum of $39,236. Most of this indebtedness had existed for several months prior to this time. Five days after it closed its doors the State Bank made an assignment for the benefit of its creditors under the insolvency law of 1881. In the meantime the Exchange Bank closed its doors, and on July 1, 1893, made an assignment for the benefit of its creditors under the same law. At the time the State Bank so closed its doors, or shortly prior thereto, it delivered to the Exchange Bank, as collateral security for said pre-existing indebtedness, 41 promissory notes held by said State Bank against divers persons and corporations in the aggregate amount of $38,972. This action is brought by the assignee of the State Bank against the assignee of the Exchange Bank to recover back said notes or the proceeds thereof, on the ground that the delivery of said notes to said Exchange Bank as such collateral security was an unlawful preference under said law. On the trial in the court below without a jury, the court found that said notes were so delivered on said June 22 as such collateral security; that the State Bank was at the time of such delivery insolvent; that the Exchange Bank then knew that the State Bank was then insolvent; and that said delivery and acceptance of said notes was with a view of giving the Exchange Bank a preference over the other creditors of said State Bank on said pre-existing debt due from it to said Exchange Bank. The court ordered judgment for plaintiff, and from an order denying his motion for a new trial the defendant appeals.

1. It is contended by appellant that the findings of fact are not supported by the evidence. In our opinion, the point is not well taken. The evidence sustains the findings of fact. Various rulings of the court on the trial, to which appellant objected and excepted, are assigned as error.

2. There was a dispute and a conflict of testimony as to when the notes in question were delivered to the Exchange Bank; the plaintiff claiming that they were so delivered on June 22, the day the State Bank closed its doors, and the defendant claiming that they were delivered several days before. One Shove was the maker of one of these notes. One Kortgaard was the president of the State Bank at and for some time prior to its failure. On the trial Shove was called as a witness for plaintiff, and testified that between 11 and 12 a. m. on June 22, the last day the State Bank did business, he was in that bank, and saw his said note on Kortgaard's desk; that some time after the assignment of both banks he received a notice from the assignee of the Exchange Bank that his note was due. He was then permitted to testify that after receiving this notice he had a conversation with Kortgaard in which he asked Kortgaard why he had given this note to the Exchange Bank, and Kortgaard answered that he would tell Shove confidentially that the Exchange Bank would be sued to recover these notes, and he did not think that it could hold them. The objection to this evidence was well taken. Clearly Kortgaard's admissions at this time bound neither the plaintiff nor defendant.

3. For the purpose of proving the insolvency of the State Bank, the court permitted the schedule of its liabilities filed in its assignment proceedings to be introduced in evidence. This was error. Such schedule was merely an ex parte affidavit of one of the officers of the State Bank made after the assignment, and the assignee of the Exchange Bank was not bound by his admission. Neither do we wish to be understood as holding that under some circumstances, at least, this schedule might not be made a part of the competent testimony of a competent witness.

4. Plaintiff called Kortgaard as a witness to prove, among other things, that at the time the State Bank closed its doors, and for some months prior thereto, it was insolvent. On cross-examination, defendant's counsel asked the witness whether or not the reputation

of the State Bank in financial circles, as to its solvency, was good in May previous to its failure. Plaintiff objected to the question as incompetent, and the court sustained the objection. This was error. Such evidence of reputation was competent, as tending to prove such solvency,—Nininger v. Knox, 8 Minn. 110 (140),—and also as having some tendency to prove that the Exchange Bank did not have knowledge or reasonable cause to believe that the State Bank was insolvent.

5. The American Realty Company was one of several corporations organized by Kortgaard apparently for the purpose of absorbing the assets of both of these banks, which corporations were indebted to the State Bank at the time of its failure in an amount exceeding $300,000 in the aggregate, of which amount the American Realty Company owed over $71,000. Much of the evidence on the trial was offered for the purpose of proving the insolvency of these corporations, which in turn would tend to prove the insolvency of the State Bank for some time prior to its failure. The realty company was also indebted to the Exchange Bank. Hon. Robert Jamison, its former assignee, was called as a witness for plaintiff, and stated that he had to some extent investigated the affairs of the realty company, and that he had formed an opinion in his own mind as to its solvency. He was then required, against defendant's objection, to state that opinion, and stated that it was that the realty company would not be able to pay 10 cents on the dollar. This was error. Such opinion was not competent evidence of insolvency. Lawson, Exp. Ev. 515, Nininger v. Knox, supra. The fact that the witness was the defendant assignee did not make the evidence competent. It was not a voluntary admission, made in the course of his business as assignee.

For these errors the order appealed from must be reversed. Many other rulings of the court are assigned as error. The witness Kortgaard was, by a series of questions put by plaintiff, asked if each of said corporations so organized by him was not insolvent. This was competent, as tending to show his knowledge of their insolvency, and in consequence thereof the insolvency of the State Bank, but not as tending to prove the fact of insolvency itself. It is true that these questions did not call for answers which would tend directly to prove that he knew that the State Bank was insolvent when he so delivered

said notes to the Exchange Bank, but the trial court was justified in regarding Kortgaard as an adverse witness, and allowing plaintiff to ask him indirect questions for the purpose of proving his knowledge of the fact, and to cross-examine him for other purposes, as was done upon the trial. This disposes of several other objections to the testimony of Kortgaard and of all the questions in the case having any merit.

Order reversed, and a new trial granted.